# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Civil Action No. 1:17-CV-02034-TSC <br> ) |
| E. SCOTT PRUITT, in his official capacity as Administrator of the U.S. Environmental Protection Agency, *et al.*, | ) <br> ) <br> )    **INTERVENOR-DEFENDANT'S REPLY** <br> )    **IN SUPPORT OF MOTION FOR** |
| Defendants, | )    **JUDGMENT ON THE PLEADINGS** <br> ) |
| and | ) <br> ) |
| CROPLIFE AMERICA, | ) <br> ) |
| Intervenor-Defendant. | ) <br> ) |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

I. THIS COURT IS NOT LIMITED TO THE ALLEGATIONS IN THE COMPLAINT IN DECIDING WHETHER PLAINTIFF HAS STANDING. ...............................................................................................................2

II. PLAINTIFF HAS NOT MET ITS BURDEN TO PROVE STANDING. ....................3

    A. Plaintiff Must Establish an Actual Injury, Not Just Aesthetic Interest................................................................................................................4

    B. Plaintiff Has Still Failed to Establish Causation....................................................7

        1. Plaintiff misunderstands what it must allege to demonstrate causation. ...................................................................................................7

        2. Plaintiff's declarations fail to connect the dots between the challenged EPA actions and the alleged injuries. ....................................9

    C. Plaintiff's Claims to Redressability Are Unavailing. ..........................................12

CONCLUSION...................................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Freedom Law Ctr. v. Obama*,
 821 F.3d 44 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1069 ...................................................13

*Artis v. Greenspan*,
 223 F. Supp. 2d 149 (D.D.C. 2002) ..............................................................................................2

*Attias v. CareFirst, Inc.*,
 865 F.3d 620 (D.C. Cir. 2017) ......................................................................................................3

*Briscoe v. United States*,
 268 F. Supp. 3d 1 (D.D.C. 2017) ..................................................................................................2

*Burt Lake Band of Ottawa and Chippewa Indians v. Zinke*,
 --- F Supp. 3d ---, 2018 WL 1542418 (D.D.C. Mar. 29, 2018) ....................................................2

*Center for Biological Diversity v. EPA*,
 847 F.3d 1075 (9th Cir. 2017) ......................................................................................................3

*Center for Biological Diversity v. EPA*,
 861 F.3d 174 (D.C. Cir. 2017) ......................................................................................................4

*Chamber of Commerce of U.S. v. EPA*,
 642 F.3d 192 (D.C. Cir. 2011) ......................................................................................................7

*Dignity Health v. Price*,
 243 F. Supp. 3d 43 (D.D.C. 2017) ..............................................................................................14

*Florida Audubon Soc'y v. Bentsen*,
 94 F.3d 658 (D.C. Cir. 1996) ....................................................................................................4, 8

*Food & Water Watch, Inc. v. Vilsack*,
 808 F.3d 905 (D.C. Cir. 2015) ................................................................................................3, 12

*Friends of Animals v. Jewell*,
 828 F.3d 989 (D.C. Cir. 2016) ......................................................................................................2

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
 528 U.S. 167 (2000) ......................................................................................................................5

*Haase v. Sessions*,
 835 F.2d 902 (D.C. Cir. 1987) ..................................................................................................2, 3

*Jerome Stevens Pharms., Inc. v. FDA*,
    402 F.3d 1249 (D.C. Cir. 2005) ................................................................................2

*Lewis v. Casey*,
    518 U.S. 343 (1996) ...................................................................................................3

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ..........................................................................................4, 6, 7

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ..................................................................................................13

*Renal Physicians Ass'n v. U.S. Dept. of Health & Human Servs.*,
    489 F.3d 1267 (D.C. Cir. 2007) ................................................................................7

*Scolaro v. Dist. of Columbia Bd. of Elections and Ethics*,
    104 F. Supp. 2d 18 (D.D.C. 2000) ............................................................................9

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ..............................................................................................2

*Warth v. Seldin*,
    422 U.S. 490 (1975) ..................................................................................................2

**Statutes**

16 U.S.C. § 1533 ...............................................................................................................11

16 U.S.C. § 1536 ...............................................................................................................11

**Other Authorities**

Notice of Pesticide Registration, Mar. 7, 2016, ...............................................................11

## INTRODUCTION

  This Court lacks jurisdiction over Plaintiff's challenges to 59 distinct EPA approvals of individual pesticide products because Plaintiff has done nothing to demonstrate the elements of Article III standing for each of those EPA actions. Instead, Plaintiff claims vague and generalized injuries from an entire class of pesticides commonly called "neonics," and grouped the challenged actions in its Complaint by the primary "neonic" active ingredient. Plaintiff's attempt to challenge dozens of EPA actions in one lawsuit does not relieve Plaintiff of its duty to demonstrate a particularized injury, caused by the specific agency action challenged, and redressable by a favorable decision, for *each* of the challenged actions. In broadly asserting injury as to "neonics" as a class and failing even to differentiate among the three distinct active ingredients that are the real target of this lawsuit, Plaintiff's declarations do not demonstrate that Plaintiff has standing to challenge any of the specific agency actions on its members' behalf. Tellingly, *not one* of the member declarations mentions *any* of the 59 specific EPA actions at issue here, much less alleges that EPA's failure to consult under the ESA when registering the products caused the (largely nonspecific) harm alleged. Thus, this Court should grant CropLife's and EPA's motions and dismiss Plaintiff's complaint.

  Plaintiff makes three primary arguments in responding to EPA's and CropLife's standing arguments: (1) Plaintiff need not offer particularized, supportable allegations at this phase of the litigation; (2) Plaintiff meets the injury and causation requirements for Article III standing because its members have "connections" to the species they claim to be harmed; and (3) Plaintiff's injuries are redressable because success in this litigation could lessen the risk to its members' interests. Plaintiff's Opposition to Defendants' Motion to Dismiss and Intervenor-Defendant's Motion for Judgment on the Pleadings ("Pl.'s Opp'n"), ECF No. 24 at 10, 13, 16. All three are wrong on the facts and law.

**I.     THIS COURT IS NOT LIMITED TO THE ALLEGATIONS IN THE COMPLAINT IN DECIDING WHETHER PLAINTIFF HAS STANDING.**

The Supreme Court has recently stated, in no uncertain terms, that in "a case at the pleading stage, the plaintiff must clearly allege facts demonstrating each element of standing." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (internal quotation marks and ellipses omitted); *accord*, *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016). Instead of acknowledging its duty, Plaintiff tries to deflect this binding precedent by contending that it need not provide anything more than the general standing allegations in its Complaint and that this Court may not review "outside evidence to challenge the factual basis of the plaintiff's standing." Pl.'s Opp'n at 8 (citing *Haase v. Sessions*, 835 F.2d 902, 907 (D.C. Cir. 1987)). Plaintiff is wrong. *Burt Lake Band of Ottawa and Chippewa Indians v. Zinke*, --- F Supp. 3d ---, 2018 WL 1542418, at *2 (D.D.C. Mar. 29, 2018) ("In evaluating a motion to dismiss under [] Rule 12(b)(1) . . . the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.").

Indeed, the D.C. Circuit and this District have repeatedly held that "the district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005); *accord, Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) (explaining that the court may evaluate "material outside of the pleadings in ruling on a motion to dismiss for lack of . . . subject-matter jurisdiction" without converting the motion into one for summary judgment); *Briscoe v. United States*, 268 F. Supp. 3d 1, 7–8 (D.D.C. 2017) ("When considering a motion to dismiss for lack of jurisdiction . . . the Court is not limited to the allegations of the complaint." (internal quotation marks and citation omitted)); *Burt Lake Band*, 2018 WL 1542418, at *2; *see*

*also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Even in *Haase* (cited by Plaintiff), the court acknowledged the ability of the trial court to "initiate [a] factual inquiry at the motion to dismiss stage." 835 F.2d at 907.

Plaintiffs are wrong to cabin this Court to just the Complaint in determining whether there is Article III jurisdiction. Regardless, and as explained below, whether looking at the face of the Complaint or beyond, Plaintiff has failed to adequately allege standing.

## II.     PLAINTIFF HAS NOT MET ITS BURDEN TO PROVE STANDING.

Plaintiff misleadingly characterizes CropLife's and EPA's central argument regarding the insufficiency of its Complaint as one of "organization." In reality, the organization of Plaintiff's Complaint is a transparent effort to avoid the requirement that Plaintiff establish standing for each claim it seeks to press.[1] CropLife Mot. 9. The Supreme Court has instructed that "standing is not dispensed in gross. If the right to complain of *one* administrative deficiency automatically conferred the right to complain of *all* administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

Even if "assumed to be true," *Attias v. CareFirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017), the allegations in Plaintiff's pleading and accompanying declarations do not demonstrate standing. Plaintiff has alleged insufficient facts even to infer that the 59 product registrations at issue harm Plaintiff's members and that EPA's actions have caused that harm. *Attias*, 865 F.3d at

---

[1] Plaintiff disingenuously implies that the Ninth Circuit endorsed Plaintiff's approach of grouping claims by active ingredient in *Center for Biological Diversity v. EPA*, 847 F.3d 1075 (9th Cir. 2017). Pl.'s Opp'n at 19–20. Plaintiff fails to acknowledge that the issue of standing was not before that court. Plaintiff also fails to acknowledge that motions to dismiss the further amended complaint on remand—including challenges to plaintiff's standing—are currently pending. *Center for Biological Diversity, et al. v. EPA*, No. 11-293, ECF Nos. 275, 276 (N.D. Cal. Nov. 15, 2017).

3

627. Perhaps sensing the deficiencies in its Complaint, Plaintiff did not rest on its pleading, despite arguing that it could. Plaintiff instead filled the Court's docket with declarations from its members, none of which satisfy the requirements of particularized injury, causation, and redressability predicative to this Court's subject-matter jurisdiction. Most importantly, none of the 13 member declarations mentions any of the 59 challenged EPA actions by name, and therefore there are *no* allegations explaining how any of the EPA actions here for judicial review caused Plaintiff's members an actual injury that is redressable by this Court.[2]

### A. Plaintiff Must Establish an Actual Injury, Not Just Aesthetic Interest.

Plaintiff's interest in the species identified in the Complaint—chronicled in pages 10-13 of its Opposition—is not at issue. But showing interest is not enough. Rather, Plaintiff must allege a concrete and particularized, actual or imminent *injury* to that interest—at every stage of the litigation. Plaintiff has not done so here. To establish actual or imminent injury flowing from an aesthetic interest, a plaintiff must identify specific locations visited with regularity. "'[S]ome day' intentions—without any description of concrete plans, or indeed any specification of *when* the some day will be—do not support a finding of … 'actual or imminent' injury …." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). Moreover, it is not enough that an interest in or alleged risk to species is identified; to establish Article III injury, the alleged risk must "imperil *the members'* particularized interests." *Ctr. for Biological Diversity v. EPA* ("*CTP*"), 861 F.3d 174, 183 (D.C. Cir. 2017) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 666 (D.C. Cir. 1996)) (internal punctuation omitted) (emphasis added). That the alleged injury must be to the

---

[2] Even if this Court finds that Plaintiff was not required to provide declarations at this stage of the litigation, it would ill serve judicial economy to delay consideration of these declarations until a later point in time.

*individual*, not the environment, is well established. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

Instead of demonstrating injury to its members, as it must, Plaintiff provided declarations that allege interest in species, while vaguely alluding to unspecific plans to visit those species and concerns regarding the species. For example, Ms. Benninghoff has expressed an interest in the American burying beetle and the rusty patched bumble bee, but is "not sure whether the American burying beetle" lives near her, and "hop[es] . . . to someday see the rusty patched bumble bee." ECF No. 24-2 ¶¶ 7, 8. She then alleges that she is "worried that [neonics are] preventing the recovery" of these species, "making it less likely that we'll see them on our property," and that "it would be crushing if we couldn't bring back these species because of actions beyond our control." *Id.* ¶ 10. Plaintiff does not explain—nor does the declaration allege—how "worry" about the potential recovery of species an individual has never seen, or a speculation about a vague scenario at some unspecified point in time, satisfies the requirements for concrete and actual or imminent injury.

Similarly, Ms. Byrd alleges she is "concerned that neonics are harming the yellow-billed cuckoo, black-capped vireo, and red-cockaded woodpecker, which *might* hurt my chances of seeing them." ECF No. 24-4 ¶ 9 (emphasis added). Mr. Cummings avers that "I'm concerned that pesticide runoff may be harming the rabbitsfoot mussel and the dwarf wedgemussel," ECF No. 24-7 ¶ 7, the latter of which he has never seen, *id.* ¶ 5. These general and speculative claims of "concern" are not cognizable injuries. Plaintiff does not reference the declaration of Mr. Kruer in its brief, and it is easy to see why; although never having seen a pallid sturgeon in the wild, he nevertheless does not want his hypothetical "ability to enjoy the pallid sturgeon . . . to be undercut by ecologically harmful pesticide use." ECF No. 24-8 ¶ 6. Mr. Kruer alleges

"concern[]" regarding neonic use in the lower Yellowstone River watershed, but does not allege actual knowledge of any neonics being used in the area. *Id.*

Other declarations also fail to satisfy Article III requirements for injury. Several declarations contradict Plaintiff's conviction that it has demonstrated an adequate geographical nexus between its members' viewing habits and the species alleged to be affected. For example, Ms. Byrne describes visiting several specific locations, such as Devil's Lake and the Ice Age National Scenic Trail in Wisconsin. ECF No. 24-5 ¶ 4. When it comes to species of interest, the allegations include looking for the Hine's emerald dragonfly "in the forest preserves and parks outside Chicago, or when I get the chance to visit my cousin at his ranch," and looking for the Karner blue butterfly "within a couple hours' drive from Chicago, or when I'm out near Devil's Lake."[3] *Id.* ¶¶ 6, 7. But no specific allegations are made with regard to returning to those areas. Similarly, Mr. Pengelley claims past visits to areas to view several species and that "[w]e'll definitely go back" to those areas, without any specifics. ECF No. 24-11 ¶ 5. He also alleges an intent to look for another species "the next time I visit my sister," with no concrete plan. *Id.* ¶ 8.[4] Past visits "prove[] nothing." *Lujan*, 504 U.S. at 564). In *Lujan* the Court also rejected other non-specific standing theories, declining to hold that any person who uses part of an ecosystem adversely affected has standing regardless of distance, or that any person who is interested in seeing endangered animals anywhere in the world has standing. *Id.* at 564–66. "Standing is not 'an ingenious academic exercise in the conceivable.'" *Id.* at 566 (citation omitted). This Court can dismiss Plaintiff's Complaint for failure to allege adequate injury alone.

---

[3] Note that Ms. Byrne alleges a belief that "it was about two years ago or more" that she last saw the Karner blue butterfly. *Id.* ¶ 11. Many of the product registrations challenged in this action had not yet occurred as of two years ago, further complicating Plaintiff's argument as to causation. *See infra* § II.B.

[4] Mr. Pengelley does not even allege that neonicotinoids are used near the areas visited; rather he alleges "plenty of opportunity for neonic use." *Id.* ¶ 9.

6

### B. Plaintiff Has Still Failed to Establish Causation.

#### 1. Plaintiff misunderstands what it must allege to demonstrate causation.

Although the standing elements become progressively more demanding as the litigation progresses, even a "general factual allegation[] of injury" at the pleading stage must be alleged to be "resulting from the defendant's conduct." *Lujan*, 504 U.S. at 561. In a procedural-injury case such as this "the plaintiff must still show that the agency action was the cause of some redressable injury to the plaintiff." *Renal Physicians Ass'n v. U.S. Dept. of Health & Human Servs.*, 489 F.3d 1267, 1279 (D.C. Cir. 2007). To establish causation, Plaintiff must demonstrate that "absent the government's allegedly unlawful actions, there is a substantial probability that [it] would not be injured." *Chamber of Commerce of U.S. v. EPA*, 642 F.3d 192, 201 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

Plaintiff's members have not even attempted to allege that, absent the alleged failure to undertake ESA consultation for the 59 specific product registration actions at issue, Plaintiff's purported injuries would not exist. For example, it is well-understood that pollinator species like those named in Plaintiff's declarations are subject to multiple risks and stressors, including the "main threats" of "habitat loss, degradation, and fragmentation."[5] It is Plaintiff's burden to establish the causation link between each of the 59 approved pesticide products and Plaintiff's injury to its interest in the species. *Lujan*, 504 U.S. at 560–61 (explaining that the plaintiff "bears the burden of establishing [the] elements" of standing, including that causation stems from the action challenged, "not the result of the independent action of some third party not before the court"). Plaintiff has failed to meet it.

---

[5] *See, e.g.,* https://www.fws.gov/pollinators/pollinatorpages/threats.html (last accessed May 4, 2018).

7

Moreover, Plaintiff is wrong that the *CTP* decision from this Circuit aids it in demonstrating standing here. As noted in CropLife's Motion, *all* products containing *one* new active ingredient were at issue in *CTP*. CropLife Mot. at 11. Therefore, an allegation with respect to the active ingredient *ipso facto* meant an allegation as to one of the product registrations at issue. Not so here, where the 59 challenged products comprise a subset of the approved products containing the three active ingredients identified in the Complaint. CropLife Mot. at 13–14. And unlike in *CTP*, Plaintiff does not even attempt to tie its standing to specific active ingredients—its member declarations make sweeping claims as to "neonics," often not even alleging knowledge of "neonic" use in a particular area. *See, e.g.*, *infra* at 9–11. Again, not one of the declarations mentions *any* of the product registrations challenged. In fact, *not one even mentions one active ingredient*. The Court cannot simply assume that any of the specific product registrations challenged relate to the "neonics" or "pesticides" allegedly used in the locations where the declarants claim to enjoy viewing species—especially because CropLife showed that other products with the same active ingredients are approved for the same uses, CropLife Mot. at 13–14, and because pesticides are not the only threat to Plaintiff's interest in these species. *See, e.g.*, *supra* n.5. Even if correct (which we contest) that Plaintiff need not prove causation "through specific facts" at this stage, Pl.'s Opp'n at 11, it must still assert a good-faith belief in an allegation particularized enough to support standing.

The D.C. Circuit's explanation of causation in *Florida Audubon Society v. Bentsen* is instructive here. There the court explained that "unless there is a substantial probability . . . that the substantive agency action that disregarded a procedural requirement created a demonstrable risk, or caused a demonstrable increase in an existing risk, of injury to the particularized interests of the plaintiff, the plaintiff lacks standing." 94 F.3d at 669. Here, as explained in CropLife's

motion, CropLife Mot. at 12–14, and as acknowledged in Plaintiff's complaint, Pl.'s Compl. ¶ 5, the 59 product registrations challenged here are only some of the more recent of the hundreds of products containing neonicotinoid active ingredients on the market. Plaintiff has not even alleged, much less demonstrated, that the alleged failure to consult with respect to the product registration actions at issue increased any risk to Plaintiff's members' interests. To the extent any of the declarations demonstrates a cognizable injury, they have not established that the injury is a result of one of the actions challenged here, as opposed to a different agency action for the same pesticide ingredients that occurred long ago.

> 2. **Plaintiff's declarations fail to connect the dots between the challenged EPA actions and the alleged injuries.**

Plaintiff claims that it has adequately alleged "that the species are exposed to and harmed by the challenged products." Pl.'s Opp'n at 13. Not so. Plaintiff has broadly alleged that numerous species existing in entirely distinct locales are *all* harmed by *each* of an entire random group of products. This strains credulity and, in any event, is insufficient to establish Article III standing. Moreover, it is clear that Plaintiff does not actually believe it can sustain standing on such sweeping allegations. It voluntarily (and confusingly) dismissed the portions of its claims with regard to particular products that it acknowledges are used "on crops that typically grow in more limited regions," Pl.'s Opp'n at 14 n.2, but has made no corresponding affirmative showing of the nexus between the products and species that remain.

Plaintiff's attempt to repair this deficiency via its Opposition is inappropriate. A party may not use a legal brief to prove standing. *Scolaro v. Dist. of Columbia Bd. of Elections and Ethics*, 104 F. Supp. 2d 18, 29 (D.D.C. 2000) ("[A]llegation . . . contained not in the complaint but in plaintiffs' brief [] is insufficient to establish any of the elements of standing" where the complaint did not support allegation.). Yet that is just what Plaintiff has attempted to do here.

9

For example, in its brief Plaintiff claims that "[f]or MalEx Citrus Leaf Miner . . . NRDC provides the declarations of Ronald Bohigian, Barbara Byrd, John McDevit, and Randal Zielinski, who view or attempt to view seven species NRDC alleges are harmed by that product in or adjacent to citrus-growing areas." Pl.'s Opp'n at 15. That claim is demonstrably false. Not one of those declarations mentions (1) MalEx Citrus Leaf Miner, (2) any allegation that the product harms the species of interest to declarants, or (3) that the areas declarants visit are near citrus-growing areas. *See* ECF No. 24-3 ¶ 6 (Bohigian) ("*I've heard* pesticide use . . . like neonicotinoids . . . can be harmful . . . people *may* be using those pesticides . . . I'm worried that the use of neonics in the area *may* be harming the vernal pool fairy shrimp) (emphasis added); ECF No. 24-4 ¶ 9 (Byrd) (claiming that "[n]eonics are used so widely these days that it's hard to escape them" but making no specific allegation regarding their use in any of the areas she visits); ECF No. 24-9 ¶ 8 (McDevit) (alleging "pesticide use is a big concern for birds, including neonicotinoid pesticides," without alleging actual use of neonicotinoids in or around the area visited); ECF No. 24-14 (Zielinski) (alleging knowledge of pesticide (not necessarily neonicotinoids) by neighbors and at a cemetery—not citrus-growing areas).

Plaintiff attempts the same sophistry with respect to EQUI TM 4.0 and Velum Total, which are registered for use on soybean and other legume groups (EQUI TM 4.0) and on cotton and peanut crops (Velum Total). Of the declarations that Plaintiff claims support its standing to challenge EQUI TM 4.0, only Mr. Tanderup alleges a connection with the "soybean growing areas," but even his declaration fails to identify any product registration at issue or connect it to EPA's action. ECF No. 24-12 ¶ 7. Ms. Benninghoff alleges proximity to corn and soybean fields, but her declaration is not among those Plaintiff identified as supporting standing for EQUI TM 4.0. In any event, she merely states that proximity "*probably* puts us square in the middle of

neonic contamination," without providing any specific allegations about product registrations or connecting those registrations to an injured interest. ECF No. 24-2 ¶ 10 (emphasis added). Nor could she provide such allegations, because consultation under the Endangered Species Act is not an exercise in facilitating the recovery of species, which is what concerns her. *See supra* at 5; *compare* 16 U.S.C. § 1536 (consultation), *with* 16 U.S.C. § 1533 (recovery planning).

The remaining declarations that supposedly relate to EQUI TM 4.0 likewise lack the requisite specificity. *See* ECF No. 24-5 (Byrne) (alleging without particularity as to geographic location that "[neonics] are toxic to insects, and that the Midwest is full of them. Illinois and Wisconsin have a lot of agriculture, to put it mildly, and farms use neonics. Farming is the chief use of land around most of the natural areas I visit, and I know Lake Wisconsin, for one, has had issues with aerial pesticide spraying and agricultural runoff."); ECF No. 24-10 (Morello) (alleging that pesticide runoff, "like from neonicotinoid pesticides," "can get into the water and affect the wildlife" in the Atchafalaya Basin, without alleging actual use of neonicotinoids); ECF No. 24-13 ¶ 9 (Walker) (alleging "beli[ef] the use of neonics across the island could be harming" yellow-faced bees without reference to any particular pesticide or crop except seed corn, for which EQUI TM 4.0 is not registered, *see* Notice of Pesticide Registration, Mar. 7, 2016, *available at* https://www3.epa.gov/pesticides/chem_search/ppls/055146-00153-20160307.pdf (last accessed May 4, 2018)).

Plaintiff's reliance on the declaration of Mr. Cohen to support its claims regarding EQUI TM 4.0 and Velum Total is particularly brazen. Mr. Cohen alleges that "I see my neighbors spraying pesticides *on their lawns*," and states there is "probably a fair amount of pesticide use" in "development between the natural areas." ECF No. 24-6 ¶ 6 (Cohen) (emphasis added). The Court should not have to bend over backwards to connect these allegations to areas where cotton,

11

peanut, soy, and legumes are grown—the crops on which Plaintiff claims EQUI TM 4.0 and Velum Total are applied. Mr. Cummings, for his part, alleges generically that "[p]esticide runoff in the watersheds that feed into the waterways where [the rabbitsfoot mussel and dwarf wedgemussel] live is always a concern," but does not specifically allege even that *neonicotinoids* are used in or near those watersheds, much less any product whose registration is challenged here. ECF No. 24-7 ¶ 7.[6]

The statement that is perhaps most emblematic of Plaintiff's case comes from Mr. Tanderup: "I'm guessing that our neighbors probably use [neonics]." ECF No. 24-12 ¶ 7. The speculation and conjecture rampant throughout that and Plaintiff's other declarations defeats any credible claim to standing.

C.  **Plaintiff's Claims to Redressability Are Unavailing.**

Plaintiff's Complaint makes the barest allegation of redressability disconnected from any specific harm or relief. Compl. ¶ 24. Plaintiff now claims, however, that the requested relief would redress its injury by "decreas[ing] the risk of harm to NRDC's interests." Pl.'s Opp'n 9. The Court should reject Plaintiff's attempt to rewrite its Complaint. Plaintiff's Complaint only alleged an increased risk of harm with respect to species (and only in the most general sense). Those allegations fall short because the relevant inquiry is harm to Plaintiff. *See supra* at 7. Moreover, Plaintiff failed to demonstrate a change to the status quo through that alleged increased risk of harm. *Food & Water Watch*, 808 F.3d at 916 (denying claim of standing where plaintiff could not show that risk of injury was any greater after agency action than before). Plaintiff has made no attempt whatsoever to allege that the product registrations at issue here

---

[6] Moreover, though Mr. Cummings alleges visits to rivers in Illinois to monitor the rabbitsfoot mussel, he has never seen the dwarf wedgemussel but hopes to "out in the wild on one of my future trips to the East Coast." *Id.* ¶ 5. There is zero nexus among species, location, and any challenged EPA action in these allegations.

measurably increased any risk of harm to Plaintiff, nor could it, given the multitude of other products already registered with the same active ingredients. *See Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 48–49 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1069 ("When the existence of one or more of the essential elements of standing 'depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, it becomes substantially more difficult to establish standing." (internal quotation marks and citations omitted)).

Plaintiff offers no explanation of how pulling the 59 challenged products off the market (for alleged agency procedural noncompliance with respect to their registration, not any inherent problem with the products) would have any impact on Plaintiff's asserted injuries. This is unsurprising given that Plaintiff has not specified which products it believes actually cause the alleged harm. Indeed, CropLife showed for several challenged products that similar products with the same uses were both authorized for use and outside this lawsuit. CropLife Mot. at 13–14. Yet neither Plaintiff's brief nor its declarations attempt to explain how the challenged products are causing injuries distinct from the products with the same active ingredients available for the same uses.

Finally, Plaintiff's reliance on *Massachusetts v. EPA* is inapt. In *Massachusetts*, the Court ruled that redressability was satisfied because "[a] reduction in domestic emissions would slow the pace of global emissions increases." 549 U.S. 497, 526 (2007). That is not what we have here. Instead, Plaintiff alleges, without basis, that "ESA consultation could result in pesticide restrictions or cancellations, which would reduce the risks to NRDC's members' interests in viewing wildlife." Pl.'s Opp'n at 17. Even if Plaintiff's Complaint so alleged (which it does not, *see* Compl. ¶ 16 (alleging registration of identified pesticides "increases the risks of harm *to the*

13

*species* identified in this Complaint")),[7] Plaintiff has made no allegation that it is even possible that the remedy it seeks—vacatur of the product registration actions—could result in less pesticide use, and this is Plaintiff's burden to prove. If Plaintiff's general allegations as to injury and causation are sufficient such that the Court reaches redressability, Plaintiff's generality—claiming "neonics" cause harm—is fatal to redressability.

## CONCLUSION

Because Plaintiff's complaint has not sufficiently alleged any of the required elements of Article III standing, the Court should dismiss the complaint in its entirety.

Dated: May 4, 2018

Respectfully submitted,

/s/ *Kirsten L. Nathanson*
KIRSTEN L. NATHANSON (D.C. Bar #463992)
David Y. Chung (D.C. Bar #500420)
Elizabeth B. Dawson (D.C. Bar #230818)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004
Tel:  (202) 624-2500
knathanson@crowell.com
dchung@crowell.com
edawson@crowell.com

***Attorneys for Intervenor-Defendant***
***CropLife America***

---

[7] Again, making claims in a brief cannot clear the standing hurdle. *See generally Dignity Health v. Price*, 243 F. Supp. 3d 43, 54 (D.D.C. 2017) (noting inability of plaintiff to amend complaint "by raising an argument in a reply brief").