UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATURE RESOURCES DEFENSE COUNCIL, <br><br>Plaintiff, <br><br>v. <br><br>ANDREW WHEELER, in his official capacity as Administrator of the U.S. Environmental Protection Agency, *et al.*, <br><br>Defendants, <br><br>and <br><br>CROPLIFE AMERICA <br><br>Intervenor-Defendant. | Civil Action No. 17-cv-2034 (TSC) |

### ORDER

This decision resolves Government-Defendants' Motion to Dismiss, ECF No. 17, and Intervenor-Defendant's Motion for Judgment on the Pleadings, ECF No. 23. Based on the court's review of the pleadings, the record, and the relevant case law, and for the reasons set forth below, the court **DENIES** both the Motion to Dismiss and the Motion for Judgment on the Pleadings.

I.  BACKGROUND

**A. The Federal Insecticide, Fungicide, and Rodenticide Act**

The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") governs the sale, distribution and use of pesticides "[t]o the extent necessary to prevent unreasonable adverse effects on the environment." 7 U.S.C. § 136a(a). FIFRA defines a pesticide as "any substance

or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest." 7 U.S.C. § 136(u).  Pursuant to FIFRA, all pesticides must be registered before they can be distributed or sold in the United States.  *See* 7 U.S.C. § 136a(a).  The Environmental Protection Agency ("EPA") must evaluate pesticide products that are intended for distribution or sale, and it must register those pesticide products that it deems meet FIFRA's requirements.  7 U.S.C. §§ 136-136y.

### B.  The Endangered Species Act

The Endangered Species Act ("ESA") was enacted "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, to provide a program for the conservation of such endangered species and threatened species, and to take such steps as may be appropriate to achieve the purposes of the treaties and conventions set forth in subsection (a) of this section."  16 U.S.C. § 1531(b).  "The plain intent of Congress in enacting [the ESA] was to halt and reverse the trend toward species extinction, whatever the cost."  *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 184 (1978).  To that end, § 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2), provides that federal agencies must consult with either the U.S. Fish and Wildlife Service ("FWS"), which is a part of the United States Department of the Interior, or the National Marine Fisheries Service ("NMFS"), which is a part of the United States Department of Commerce, to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species."  16 U.S.C. § 1536(a)(2); *see also Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 177, 181 (D.C. Cir. 2017).  Federal agencies proposing an action must determine, at the earliest possible time, whether that action "may affect" threatened or endangered species, and, if it does, must consult

with either FWS or NMFS.  50 C.F.R. § 402.14(a).  This consultation can take the form of informal written concurrence or formal consultation.  50 C.F.R. §§ 402.13-402.14.  Depending on the severity and likelihood of harm to threatened or endangered species, the FWS or NMFS will propose alternative or remedial measures to minimize the impact.  *See* 16 U.S.C. §§ 1536(b)(3)(A), (b)(4); 50 C.F.R. §§ 402.14(h)(3), (i).  This consultation process is "designed as an integral check on federal agency action, ensuring that such action does not go forward without full consideration of its effects on listed species."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 603 (1992).

### C.  Plaintiff's Lawsuit

Plaintiff Natural Resources Defense Council ("NRDC") contends that the EPA violated the ESA when it failed to consult with FWS or NMFS before registering fifty-nine pesticide products.  All the challenged products contain one of three neonicotinoid ("neonic") active ingredients: 1) acetamiprid, 2) dinotefuran, or 3) imidacloprid.  NRDC describes neonics as "systemic pesticides," meaning that "[w]hen a plant is treated with a neonic, it absorbs the pesticide, making the tissues of the plant itself—including its pollen, fruit, and nectar—toxic to pests and other wildlife."  Compl. ¶ 2.  Neonics, NRDC states, are also "insecticides, which kill insects by design" and which "harm birds, fish, amphibians, and invertebrate species, such as crustaceans, mollusks, and spiders."  *Id.* ¶ 3.  Because they can "persist in the soil and water for several years and are used in high volumes for agriculture and gardening, [neonics] are ubiquitous in the environment throughout most of the country."  *Id.*  Consequently, Plaintiff claims, neonics' presence in the environment poses significant risks to wildlife and threatened and endangered species.  *Id.* ¶¶ 4-5.

Government-Defendants Andrew Wheeler,[1] in his official capacity as the EPA Administrator, and the EPA have moved, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the Complaint on the grounds that Plaintiff lacks standing.[2]  ECF No. 17.  Intervenor-Defendant Croplife America ("CropLife") has also moved, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings.[3]  ECF No. 23.

## II.     LEGAL STANDARD

A motion pursuant to Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction."  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan*, 504 U.S. at 560.  At the pleading stage, a plaintiff is "required only to state a *plausible* claim that each of the standing elements is present."  *Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017) (quotation marks and citations omitted) (emphasis in original).  The court must also "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor," *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015), and "general factual allegations of injury resulting from the defendant's conduct may suffice," *Attias*, 865 F.3d at 625-26 (quotation marks and citations omitted).  These

---

[1] Andrew Wheeler is substituted for E. Scott Pruitt as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] The Complaint has been modified by the parties' Joint Stipulation of Dismissal.  *See* ECF No. 16.

[3] As required by Rule 24, when Croplife moved to intervene, it also filed its answer to the Complaint.  Therefore, its motion is styled as one for judgment on the pleadings.  However, when reviewing a motion for judgment on the pleadings for lack of standing, the court applies "the standard of a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)."  *Smallwood v. U.S. Dep't of Justice*, 266 F. Supp. 3d 217, 219 (D.D.C. 2017).

general factual allegations are presumed to "embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (quotation marks and citation omitted).

In asserting standing on behalf of its members, an organization must show that "(1) at least one of its members has standing in its own right, (2) the interests [it] seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires the participation of an individual . . . member in the suit." *Interstate Nat. Gas Ass'n of Am. v. FERC*, 494 F.3d 1092, 1095 (D.C. Cir. 2007) (citation omitted).  An individual must show "actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision." *PETA v. USDA*, 797 F.3d 1087, 1093 (D.C. Cir. 2015) (quotation marks and citations omitted).  An injury in fact must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Ctr. for Biological Diversity*, 861 F.3d at 182 (quotation marks and citation omitted).  An injury is fairly traceable to the challenged action when the injury is causally connected to the action and "not the result of the independent action of some third party not before the court." *Id.* (quotation marks and citation omitted).  The redressability requirement is not satisfied when "conjecture is necessary" to conclude that favorable judicial intervention will remedy the plaintiff's injury.  *Id.* (quotation marks and citation omitted).

### III.   STANDING DISCUSSION

The court finds that the latter two elements of associational standing are easily satisfied here, and Defendants have not asserted otherwise.  NRDC "is a national, non-profit environmental and public health organization with over 400,000 members."  Compl. ¶ 6.  It "engages in research, advocacy, media, and litigation to protect public health and the environment, including wildlife," and its "mission includes protecting wildlife in general and threatened and endangered species in particular."  *Id*.  NRDC has an "'obvious interest in

challenging' the EPA's failure to engage in consultation." *Ctr. for Biological Diversity*, 861 F.3d at 182 (quoting *Am. Trucking Ass'ns v. Fed. Motor Carrier Safety Admin.*, 724 F.3d 243, 247 (D.C. Cir. 2013)). And neither the claim asserted nor the relief requested requires the participation of an individual member. Therefore, the remaining question is whether at least one NRDC member would have standing to sue in his or her own right.

NRDC's claim "that the EPA failed to meet its statutory consultation obligation . . . describes an 'archetypal procedural injury.'" *Ctr. for Biological Diversity*, 861 F.3d at 182 (quoting *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013)). In procedural injury cases, courts "'relax the redressability and imminence requirements' of standing." *Id.* (quoting *WildEarth Guardians*, 738 F.3d at 305). Nonetheless, a plaintiff alleging a procedural violation must still show "a causal connection between the government action that supposedly required the disregarded procedure and some reasonably increased risk of injury to its particularized interest." *Ctr. for Biological Diversity*, 861 F.3d at 183 (citations and quotation marks omitted). With respect to EPA's failure to consult before registering pesticides, plaintiffs must show a "substantial probability" of a "demonstrable risk" to the endangered or threatened species by demonstrating a "geographical nexus" between the use of the neonics and the identified species' habitats. *Id.* at 183-84.

### A. Injury in fact

Plaintiff's members' ability to enjoy species is an esthetic interest for standing purposes. *See Humane Soc'y of the U.S. v. Hodel*, 840 F.2d 45, 52 (D.C. Cir. 1988). "[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." *Lujan*, 504 U.S. at 562-63. Plaintiff alleges that its members "regularly observe, visit, and delight in the threatened and endangered species described in

[Plaintiff's] Complaint." Compl. ¶ 7. Moreover, "NRDC members intend to continue doing so in the future" and they "derive scientific, educational, recreational, conservation, aesthetic, and other benefits from the existence of these species in the wild." *Id.*

In addition, the Complaint names specific NRDC members and connects them to each of the twenty-six threatened and endangered species. *See* Compl. ¶¶ 8-15. Plaintiff submitted numerous declarations from members who describe their interests in the species potentially harmed by the challenged pesticide products. *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. B-N, ECF No. 24. These allegations are enough to establish NRDC's members' esthetic interest in observing the animals threatened by the challenged pesticide products.

Plaintiff has also shown a geographical nexus between the pesticides and the allegedly threatened species. It identifies the geographic locations of the identified species, Compl. ¶¶ 51-58 (terrestrial), 60-63 (aquatic), 65-68 (birds), 70-71 (aquatic vertebrates), alleges that the pesticide products are used in and adjacent to these species' habitats, *id.* ¶¶ 59, 64, 69, 72, states that the pesticides migrate through the environment, *id.* ¶¶ 74-77, and contends that the species are likely to be adversely affected by the pesticide products, *id.* ¶¶ 78-82. At the pleading stage, these allegations sufficiently establish the substantial probability of a demonstrable risk to the threatened and endangered species.

Government-Defendants incorrectly contend that the D.C. Circuit's decision in *Center for Biological Diversity* requires Plaintiffs to establish more with respect to the substantial probability of a demonstrable risk. That case, which involved the D.C. Circuit's original jurisdiction, dealt with the issue of standing at the merits stage and had a factual record that had been developed before the EPA regarding the potential overlap between areas of potential pesticide use and habitats. Even so, with respect to some species, the potential overlap was as

small as 0.06% to 15%.  *See Ctr. for Biological Diversity*, 861 F.3d at 192 (Randolph, J., dissenting).  Nothing in *Center for Biological Diversity* suggests that the specific allegations in Plaintiff's Complaint are insufficient.

### B.  Causation and Redressability

Because NRDC has alleged that the challenged products are extensively used, including in the identified species' geographic areas, Compl. ¶¶ 59, 64, 69, 72, and their use would harm NRDC's members interest in viewing the species, the causation prong of standing is satisfied.  For redressability in procedural injury cases, a plaintiff need only show that "the procedural step was connected to the substantive result."  *WildEarth Guardians*, 738 F.3d at 306 (quoting *Massachusetts v. EPA,* 549 U.S. 497, 518 (2007)).  Because consultation about the challenged neonic products "could" result in pesticide product restrictions or cancellations, *Ctr. for Biological Diversity*, 861 F.3d at 185, NRDC has demonstrated redressability.

### C.  The Complaint's Grouping of Pesticides into Three Claims Based on the Active Ingredient

The EPA argues that the organization of Plaintiff's Complaint into three claims, which groups pesticides according to their active ingredient, fails to demonstrate standing for the fifty-nine registration decisions that Plaintiff challenges.  The court disagrees.  The harms allegedly caused by the products in each group overlap because the products are part of the same class of pesticides.  Courts have provided relief for plaintiffs who organized their failure-to-consult claims according to active ingredients.  *See Ellis v. Housenger*, 252 F. Supp. 3d 800, 814, 816-19 (N.D. Cal. 2017) (granting relief where complaint grouped seventy-three pesticide product registrations according to their two common active ingredients).  The sole case on which Government-Defendants rely, *Ctr. for Biological Diversity v. EPA*, 2013 WL 1729573 (N.D. Cal. Apr. 22, 2013), did not involve the grouping of pesticides based on active ingredients;

rather, the plaintiff challenged 382 different pesticide active ingredients in a single claim. *Id.* at *4.

## IV. PROGRAMMATIC CHALLENGE ANALYSIS

Finally, EPA's argument that Plaintiff's claims should be rejected as an improper programmatic challenge lacks merit. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (holding that complaint raised an improper programmatic claim rather than a challenge to discrete agency action). Plaintiff has successfully "direct[ed] its attack against some particular 'agency action' that causes it harm," *id.*, by specifying fifty-nine individual pesticide registration decisions that harm its members' interest in viewing twenty-six threatened and endangered species. *See San Juan Audubon Soc'y v. Veneman*, 153 F. Supp. 2d 1, 5-6 (D.D.C. 2001) (concluding that plaintiff's challenge to a series of agency decisions was not an improper challenge to a broader program).

## V. CONCLUSION

For the reasons stated above, the court hereby **DENIES** Government-Defendants' Motion to Dismiss, ECF No. 17, and **DENIES** Defendant-Intervenor's Motion for Judgment on the Pleadings, ECF No. 23.

The parties shall meet and confer and file within 14 days a Joint Status Report proposing how to move forward in this case.

Date: September 24, 2019

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge